

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD ANTHONY NEWTON,

    Petitioner,

v.                                                                                         Civil Action No. **3:18CV336**

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Richard Anthony Newton, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging his convictions in the Circuit Court of the County of Mecklenburg, Virginia ("Circuit Court"). In his § 2254 Petition, Newton argues that he is entitled to relief based upon the following claims:[1]

    Claim One:    "Ineffective assistance of counsel - failure to plea bargain." Counsel (a) failed to have the plea reduced to writing as required by state law, failed to "tr[y] to plea bargain," and (b) counsel had evidence that Newton was actually innocent, but allowed him to plead guilty. (*Id.* at 6.)

    Claim Two:    "Ineffective assistance of counsel - failure to mitigate at sentencing." (*Id.* at 7.)

    Claim Three:    "Ineffective assistance of counsel and/or *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] claim." (*Id.* at 9.)

Respondent moves to dismiss on the grounds that Newton's claims are procedurally defaulted and barred from review here, and lack merit. Newton has filed a lengthy, rambling, and difficult to follow "Traverse/Reply," wherein he provides supporting argument for his claims for

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Newton's submissions.

the first time ("Response," ECF No. 12).[2] For the reasons set forth below, the Motion to Dismiss (ECF No. 5) will be GRANTED, and the § 2254 Petition will be DENIED.

## I. PROCEDURAL HISTORY

Pursuant to an *Alford* plea, Newton pled guilty to one count of rape and one count of sodomy. *See Commonwealth v. Newton*, Nos. CR14–111–00 & CR14–154–02, at 32–33 (Va. Cir. Ct. Oct. 20, 2014).[3] The Commonwealth also agreed to nolle prosse two Indictments for rape. *Id.* at 32.[4] On January 6, 2015, the Circuit Court sentenced Newton to fifty years of incarceration on each count, with all but forty years suspended. *See Newton*, at 56–57.

Newton filed no appeal. On July 20, 2016, Newton filed a petition for writ of habeas corpus in the Circuit Court raising what appears to contain Claim One (a) of the instant § 2254 Petition. Petition for Writ of Habeas Corpus at 1–13, *Newton v. Clarke, Dir., Va. Dep't of Corr.*, No. CL16–572 (Va. Cir. Ct. July 20, 2016).[5] The Circuit Court dismissed the habeas petition. *Newton*, No. CL16–572, at 232–34 (Va. Cir. Ct. Dec. 7, 2016). Newton filed a petition for appeal in the

---

[2] To the extent Newton seeks to add new claims in his rambling and repetitive Response, the Court notes that Petitioner cannot add new claims by a passing reference in this submission. *Cf. Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Therefore, to the extent that Newton seeks to add any new claims in his Response, the new claims will receive no further consideration in this action.

[3] The Court employs the continuous pagination assigned to the Circuit Court record by the Circuit Court Clerk. The Court hereinafter refers to Newton's criminal record simply as "*Newton*."

[4] Newton pled guilty to the rape charge from 2014; however, there were two additional counts of rape from 2012 and 2013, and those were dismissed. (Oct. 10, 2014 Tr. 13.)

[5] Because the Circuit Court record is a photocopy of the original state court record and many file stamps do not appear on the copies, the Court employs the filed date on the Table of Contents accompanying the record.

Supreme Court of Virginia; however, the Supreme Court of Virginia dismissed the petition for appeal because "the appeal was not perfected in the manner provided by law because the petition for appeal fails to assign error as required by Rule 5:17(c)(1)(i)." *Newton v. Clarke, Dir., Va. Dep't of Corr.*, No. 170320, at 1 (Va. May 19, 2017). On May 21, 2018, the Court received Newton's § 2254 Petition.

## II. SUMMARY OF THE EVIDENCE

During the plea hearing, the Commonwealth summarized the evidence of Newton's guilt as follows:

> [O]n March 7th of this year, former Lieutenant Whittemore with the Mecklenburg sheriff's office, was dispatched to 812 Finneywood Road located here in Mecklenburg County in reference to a rape.
> Once arriving on the scene, he was able to locate a fourteen year old juvenile with the initials of C.B. C.B. had indicated while at that residence on 812 Finneywood Drive, her biological father, this defendant, Richard Anthony Newton, engaged in sexual intercourse both vaginally and anally with her on that morning.
> She indicated that he penetrated her rectum as well as her vagina with his penis and that he ejaculated.
> Lieutenant Whittemore at the time then asked C.B. if she had used the bathroom or shower[ed] or anything to that effect. C.B. indicated that she had not, and that the first opportunity that she had after the rape had occurred and the sodomy had occurred she had left the house still wearing the same clothes that she was wearing this morning, ran to a neighbor's house and then informed -- called her mother to inform her of the allegations of the rape and sodomy.
> C.B. was subsequently on the same day interviewed by Investigator Mark Wright with the Mecklenburg sheriff's office as well as Sandra Gregory of the Department of Social Services. This video was -- or this interview was video and audio recorded.
> C.B. indicated that this defendant, Richard Anthony Newton, was her biological father and that at approximately the age of seven, sexual abuse began occurring at the hands of -- by the hands of Mr. Newton. It started around when she was seven years old when the family was residing in Richmond and started with inappropriate touching of her breast area as well as her vaginal area.
> As she aged and turned the age of twelve and began menstruating, C.B. indicated that her father began raping her both anally and vaginally and also orally, and that this had been a regular occurrence since the age of twelve and culminating in the events of March [7]th, 2014.

3

> C.B. indicated that she told the defendant to stop on multiple occasions that morning and that she did not wish to have anal intercourse or vaginal intercourse with her father on that morning.
> She indicated that she had not been a willing participant throughout the whole entire relationship.
> After the interview with C.B. was concluded . . . she was transported by Lieutenant Whittemore to VCU where she was subjected to a PERK kit examination performed by nurse practitioner, Shamika Murrell. A DNA sample was recovered and a profile was made the from the semen left in the cavity vaginal area as well as C.B.'s leg area. And a DNA profile was developed from that sample.
> . . . .
> . . . [A]fter the Physical Evidence Recovery Kit was performed and a DNA profile was developed, shortly after, on March 10th of 2014, this defendant, Richard Anthony Newton, was interviewed by Investigator Mark Wright with the Mecklenburg sheriff's office in reference to this sexual assault.
> Mr. Newton denied the allegations and indicated that none of this was true.
> . . . .
> He denied any involvement or any allegations of force. He basically said it did not occur.
> However, when Investigator Wright asked this defendant for a sample of his DNA, he refused vigorously. Ultimately, however, though, he did consent to having his DNA developed. And ultimately that was sent off and a DNA profile was developed from a sample that he provided.
> A DNA comparison was done by the Virginia Department of Forensic Science . . . [which] shows that there is a one in six point five billion chance that this defendant was not the perpetrator or the supplier of the DNA samples that were given on that day and taken from the person of C.B.
> . . . .
> In addition to the events on March 7th, 2014, C.B. indicated that there were two specific other events of rape, one occurring in the year 2013 and one occurring in the year of 2012, that she also shared with investigators as well as Miss Gregory, Sandra Gregory, . . . with the Department of Social Services, and Investigator Wright with the Mecklenburg sheriff's office.

(Oct. 10, 2014 Tr. 8–13.) The Circuit Court found "the evidence of guilt is overwhelming and substantially negates the defendant's claim of innocence" (Oct. 10, 2014 Tr. 14–15), and found Newton "guilty as charged" (Oct. 10, 2014 Tr. 18).

### III. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in

4

Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[6] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

To exhaust his claims, Newton was required to present properly these claims to the Supreme Court of Virginia. Newton attempted to raise Claim One (a) here in his petition for appeal, however, the Supreme Court dismissed his appeal for failing to assign error in compliance with Va. Sup. Ct. R. 5:17(c)(1)(i). *Newton v. Clarke, Dir., Va. Dep't of Corr.*, No. 170320, at 1 (Va. May 19, 2017). Virginia Supreme Court Rule 5:17(c) is an independent and adequate state

---

[6] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

ground for dismissal, and thus, the Court is barred from reviewing this claim. *See Mueller v. Angelone*, 181 F.3d 582–84 (4th Cir. 1999).

Newton did not raise Claims One (b), Claim Two, or Claim Three in the Supreme Court of Virginia.[7] If Newton now attempted to raise his claims in the Supreme Court of Virginia in a habeas petition, that habeas petition would be barred as successive pursuant to section 8.01–654(B)(2) of the Virginia Code,[8] and as untimely pursuant to section 8.01–654(A)(2) of the Virginia Code.[9] Virginia's statute of limitations for habeas actions and the bar on successive habeas petitions are adequate and independent procedural rules when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006).

---

[7] In his § 2254 Petition, Newton indicates that he raised all of his claims in his state habeas petition and his appeal to the Supreme Court of Virginia. (§ 2254 Pet. 6–10.) The Court has reviewed Newton's state habeas petition form which reflects that only Claim One (a) was raised. To the extent Newton raised any of these claims in his petition for appeal, they too would have been barred by Va. Sup. Ct. R. 5:17(c)(1)(i).

[8] This statute provides, in relevant part:

> Such petition shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01–654(B)(2) (West 2019).

[9] This statute provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2019).

Respondent acknowledges that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. However, *Martinez* fails to excuse the default in Claim One (a), which was squarely presented at his initial-review collateral proceeding and rejected by the Circuit Court. Instead, this claim is defaulted because he failed to properly raise it before the Supreme Court of Virginia on a collateral appeal. The explicit language of *Martinez* indicates that its holding applies only to the initial-review collateral proceeding for raising claims of trial counsel error. *See Atkins v. Holloway*, 792 F.3d 654, 661 (6th Cir. 2015) (citations omitted); *Johnson v. Warden of Broad River Corr. Inst.*, No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) (citing *Martinez*, 566 U.S. at 16). Because the default of Claim One (a) occurred on appeal, and any lack of appellate counsel cannot serve as cause for the procedural default of Claim One (a), this claim is barred from review here. *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (citations omitted) (explaining that *Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals"); *Atkins*, 792 F.3d at 661; *Johnson*, 2013 WL 856731, at *1. Accordingly, Claim One (a) will be DISMISSED.[10]

---

[10] In his Response, Newton argues that his actual innocence excuses his default. Newton may obtain review of his claims "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 315–16 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)). "Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Here, the Court would review Newton's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Newton's actual innocence claims would permit the Court to consider the merits of his otherwise procedurally defaulted claim. A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. At most, Newton contends that "he is claiming he is 'actually innocent' of the crimes charged because there is no evidence to support these crimes per the laws of Va." (Response 16.) Newton's argument as to his innocence is rambling and far-flung.

With respect to Claims One (b), Two, and Three, *Martinez* may excuse Newton's default of these claims because he failed to raise them in his state habeas petition in the Circuit Court.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B. Innocence and *Brady* Claim

In Claims One (b) and Three, Newton argues that counsel allowed him to enter into an *Alford* plea, when counsel possessed "exculpatory DNA and medical evidence that would have proven Newton's 'actual innocen[ce]' of the charges of rape and forcible sodomy [and] counsel

---

However, Newton appears to argue that he could not be guilty of rape because he had consensual sex with his daughter. (*Id.* at 23.) Newton also points to evidence that he contends counsel allegedly failed to "bring forward" (§ 2254 Pet. 6), that shows he was innocent, a notion dispelled later in the discussion of Claims One (b) and Three. (*Id.* at 9–11, 15–16.) Newton fails to produce any new reliable evidence, and as such, fails to establish that he is actually innocent.

9

failed to bring this forward until after the plea hearing." (§ 2254 Pet. 6.) Newton also claims that counsel committed a *Brady* violation. These claims make little to no sense. *Brady* and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011). Accordingly, in order to obtain relief under *Brady*, a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." *Id.* (citing *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003)). Here, Newton fails to identify any evidence that the Government suppressed. Newton fails to identify, and the Court fails to discern any *Brady* violation.

Rather, Newton argues that counsel "failed to bring" certain evidence "forward." (§ 2254 Pet. 6.) Presumably, Newton alleges that counsel failed to share certain discovery with Newton that he believes would show that he was innocent. At most, in his § 2254 Petition, Newton identifies this evidence as "exculpatory DNA and medical evidence that would prove Newton is 'actually innocent.'" (*Id.*) As previously explained, to demonstrate that he is actually innocent, Newton must now present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Although Newton characterizes this evidence as demonstrating his "actual innocence," none of the evidence he relies upon is "new," as it was available prior to his entry of his guilty plea. Rather, Newton faults counsel for allowing him to plead guilty when evidence existed prior to the entry of his guilty plea that he believes would establish a defense to the charges. However, the DNA and medical evidence that Newton identifies does not show that he was innocent. Rather, the evidence demonstrated that Newton "[could] not be eliminated as a contributor" of the DNA samples recovered from the victim, and Newton was certainly aware of

this prior to the entry of his guilty pleas. *Newton*, at 24; (Oct. 10, 2014 Tr. 12). Buried in his Response, Newton adds the following:

> [Counsel's] notes show that he had spoken to Ms. Angie Rainey at the state forensic lab and during that conversation, Rainey stated that the semen in the vaginal sample could be from pre-ejaculatory fluids, confirming Newton's statement to [counsel] that Newton did not ejaculate.
>
> ....
>
> .... The result of the rape kit state clearly that it was non-specific for sexual assault. Those results show that there was no damage done to the vagina or anus even though Newton was accused of forcing C.B. to perform oral, anal, and vaginal intercourse multiple times in approximately a 2 hour window. Therefore, due to these findings the medical provider cannot state clearly that there had been any intercourse at all and sexual assault is a much lesser degree of culpability than rape.
>
> The D.N.A. certificate proves that there was no anal intercourse because it states that the anorectal sample showed no spermatozoa or semenal fluids was detected. All of this [counsel] had in his possession but allowed to go uncorrected in the plea colloquy, essentially aiding the Commonwealth in winning a conviction by fraud.

(Response 9–10 (emphasis omitted).) The Court fails to discern why Newton believes this evidence demonstrates that he is innocent of rape or forcible sodomy, or on what ground counsel could have contested the evidence during the plea colloquy without the Government moving to withdraw the plea. The fact that the semen found in the victim's vaginal sample "could be from pre-ejaculatory fluids" does not make Newton any less guilty of rape, and the fact that no semen was found in the anorectal sample does not make him any less guilty of forcible sodomy. Moreover, regardless of Newton's interpretation of the test results from the rape kit, a review of the Certificate of Analysis demonstrates that samples were taken of the vaginal/cervical area and the perianal/buttocks area of the victim, "[s]permatozoa were identified in each of these samples" and Newton was a contributor of those samples. *Newton*, at 24. Additionally, the lab report found blood in the vaginal/cervical samples. *Id.* Accordingly, Newton fails to identify why this evidence would show his innocence or why, based on this evidence, counsel was deficient for allowing Newton to enter into *Alford* pleas.

11

Moreover, Newton entered into a guilty plea on his own accord and heard the evidence presented against him that satisfied the elements of rape and sodomy. (Oct. 10, 2014 Tr. 14.) Counsel explained that prior to Newton's decision to enter into *Alford* pleas, he

> reviewed all evidence with him, along with the Commonwealth's offer. It was made clear to Newton that he had an absolute right to plead not guilty, that no specific sentence was offered by the Commonwealth, and it was explicitly and thoroughly explained that there would be no agreement as to a sentencing cap and that sentencing would be fully within the Judge's discretion, up to the max allowed by law, life. The defendant agreed to accept the offer. . . . This was also explained thoroughly to Newton by the trial court at arraignment.
> Newton freely and voluntarily agreed to enter Alford pleas to 2 counts, with 2 nolle prossed, after a full and complete voir dire by the trial court, knowing that sentencing would be fully within the Court's discretion.

*Newton*, at 175. During the plea hearing, Newton indicated that he fully understood the charges against him, had discussed the elements of each charge with his attorney, understood what the Commonwealth must prove to demonstrate his guilt, discussed any defenses that he might have with his attorney, and, after discussions with his attorney, Newton "decide[d] for [him]self that [he] would enter this *Alford* plea of guilty." (Oct. 10, 2014 Tr. 6–7.) To confirm that it was Newton's decision alone to plead guilty, the Circuit Court asked him again whether it was his decision to enter into an *Alford* plea of guilty, and Newton confirmed that it was his decision. (Oct. 10, 2014 Tr. 7.) The Commonwealth presented the evidence that supported each element of the charges of rape and sodomy and counsel noted no objection to the summary of the evidence. (Oct. 10, 2014 Tr. 8–13.) After hearing the evidence, Newton agreed that he "was pleading guilty because this is the Commonwealth's evidence and you do not want to take the risk that a jury would find you guilty beyond a reasonable doubt." (Oct. 10, 2014 Tr. 14.) Thus, Newton fails to explain, and the Court fails to discern on what ground counsel could have argued that Newton was innocent in light of Newton's guilty pleas. Accordingly, Claims One (b) and Three lack merit and will be DISMISSED.

### B. Sentencing Claim

In Claim Two, Newton faults counsel for "fail[ing] to mitigate at sentencing." (§ 2254 Pet. 7.) Newton claims that counsel "put forth absolutely no effort to mitigate a sentence in Newton's favor or use evidence [on] Newton's behalf or cross-examine the state's witness pertaining to these charges." (*Id.*) Other than his vague statements, Newton fails to identify any additional persuasive argument that counsel could have made with respect to his sentence. Thus, he fails to demonstrate deficiency of counsel or resulting prejudice. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); *United States v. Dyess*, 730 F.3d 354, 359–60 (4th Cir. 2013) (noting that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court" (citations omitted) (internal quotation marks omitted)).

For the first time in his Response, Newton first suggests that "Clay had evidence in his possession in the form of exculpatory D.N.A. and exculpatory medical evidence that should have been used to mitigate a sentence to the lower range of the sentencing guidelines." (Response 20.) Instead of describing with the requisite specificity what this alleged exculpatory evidence would have demonstrated in mitigation, Newton argues that counsel should have introduced evidence about the sexual activities of the victim, his alleged erectile dysfunction, and the tests that showed "Newton had a fairly small risk for a new sexual offense." (Response 20–22.) It is readily apparent that Newton wanted counsel to continue to fight the charges to which he had pled guilty, although that was not the appropriate time or place to make such arguments. Newton fails to suggest why the Circuit Court would look favorably upon arguments about his alleged innocence during the sentencing phase of his criminal proceedings. Rather, this would suggest to the Circuit Court that

Newton refused to accept any form of responsibility for his actions and could likely result in a greater sentence. Counsel reasonably eschewed from advancing these arguments that would have run counter to Newton's *Alford* pleas of guilty during sentencing.

During the guilty plea hearing, Newton himself supplied the fact that he faced "up to life" imprisonment for both rape and forcible sodomy. (Oct. 10, 2014 Tr. 16.) The Circuit Court explained to Newton that "these charges could be run consecutively, that is up to two life terms" and Newton agreed that he understood. (Oct. 10, 2014. Tr. 16.) Counsel called several witnesses during sentencing in an attempt to provide mitigating evidence; however, through no fault of counsel, this testimony proved weak, at best. Counsel called Newton's other daughter who testified that Newton had never abused her despite a fabricated allegation made by her mother years before during their divorce proceedings. (Jan 6, 2015 Tr. 33.) During questioning by the Commonwealth, Newton's daughter also testified that, "[h]e has always been a good father to me. Yeah, he obviously made a mistake, but he has always been a great father to me." (Jan. 6, 2015 Tr. 35.) Counsel also elicited testimony from Newton's wife, the victim's step-mother, that the victim "would say inappropriate things [to Newton] or . . . she would pinch him on his butt" and that Newton tried to distance himself from the victim. (Jan. 6, 2015 Tr. 37–38.) During the questioning of Newton's wife, the Commonwealth also asked her in the context of Newton's polygraph results whether it surprised her that "Mr. Newton has admitted to having sex with [the victim]," and she responded in the affirmative. (Jan. 6, 2015 Tr. 43.) Newton's wife also testified that Newton later admitted to her "that he had sex with [the victim]." (Jan. 6, 2015. Tr. 44.) In light of this testimony, counsel argued that Newton "accepts the fact that the sexual conduct on March 7, 2014 was entirely inappropriate." (Jan 6, 2015 Tr. 56.)

Also during sentencing, a psychosexual evaluation that Newton references was made a part of the record. (Jan. 6, 2015 Tr. 3.) Newton contends it "showed Newton had a fairly small risk for a new sexual offense" (Response 22), and counsel should have argued this during sentencing. In fact, counsel argued precisely that. In its closing, the Commonwealth argued that the psychosexual evaluation showed that Newton believed that "he was really the victim of his daughter's sexual appetite" (Jan. 6, 2015 Tr. 51), and that it demonstrated a "theme of absolute inability to take any responsibility for anything this man has ever done." (Jan. 6, 2015 Tr. 50.) Counsel attempted to explain that although Newton believed the victim was the aggressor, he knows he "went entirely too far and takes responsibility for that." (Jan 6, 2015 Tr. 57.) Counsel also argued that the presence of Newton's semen on the victim's perianal and vaginal areas did "not prove any type of penetration." (Jan. 6, 2015 Tr. 57.) Finally, counsel argued that the evaluation indicated that Newton is "low risk category on the Static-99 test." (Jan 6. 2015 Tr. 58.) As counsel argued that Newton was a low risk based on the evaluation, Newton fails to identify what further argument counsel could have advanced in this regard that would have served as mitigating evidence.

Under Virginia law, the advisory guidelines range was between eight years of incarceration and twenty-five years and nine months of incarceration. *Newton*, at 59. However, based on Newton's refusal to accept responsibility for his actions, the irreversible damage he had done to the victim, and the future danger he would pose to her, the Commonwealth asked for a sentence of two life terms. (Jan. 6, 2015 Tr. 52–53.) Counsel argued that because Newton accepted that he "went far past where [he] should have," and because he was low-risk, the mid-to-low point of the guidelines was appropriate. (Jan 6, 2015 Tr. 58.) The Circuit Court noted that Newton's "lawyer is exactly right to point out the Static-99 . . . . [a]nd that does not indicate a high number." (Jan.

15

6, 2015 Tr. 61.) The Circuit Court also indicated that it had no "question that [Newton] did this over a period of time with this young lady and that is the problem with regard to this case." (Jan 6, 2015 Tr. 62.) The Circuit Court found that consecutive sentences of fifty years on each count, with all but forty years suspended, was appropriate. (Jan. 6, 2015 Tr. 62–63.) Newton fails to suggest, and the Court fails to discern, what more counsel could have done that would have resulted in Newton receiving a lower sentence. Thus, Newton fails to show any deficiency of counsel or resulting prejudice. Accordingly, Claim Two lacks merit and will be DISMISSED.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 5) will be GRANTED. Newton's claims will be DISMISSED, and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[11]

An appropriate Order shall issue.

/s/ Roderick C. Young
Roderick C. Young
United States Magistrate Judge

Date: February 25, 2019
Richmond, Virginia

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Newton fails to meet this standard.